Filed 1/13/15  Camarillo v. County of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DANA L. CAMARILLO, | B252161 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC474290) |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from the judgment of the Superior Court of Los Angeles, Debre Katz Weintraub, Judge.  Reversed.

Law Offices of Gregory W. Smith, Gregory W. Smith, Boris Koron; Benedon & Serlin, Douglas G. Benedon, Gerald M. Serlin, for Plaintiff and Appellant.

Lawrence Beach Allen & Choi, Michael D. Allen, Scott E Caron, for Defendant and Respondent.

_____

Plaintiff and appellant Dana L. Camarillo appeals from a summary judgment in favor of defendant and respondent County of Los Angeles in this action for employment discrimination and retaliation. Camarillo contends: (1) the trial court erred by excluding portions of her expert witness's declaration; and (2) triable issues of fact exist as to whether the denial of a lateral position she applied for or the transfer to a lateral position at Men's Central Jail were adverse employment actions. We conclude the trial court abused its discretion by excluding the expert testimony, and as a result, the evidence presented triable issues of material fact. We reverse.

## FACTS AND PROCEDURAL HISTORY

### Allegations of the Complaint

On November 29, 2011, Camarillo filed a complaint against the County for employment discrimination and retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, §12940 et seq.). On February 13, 2013, she filed an amended complaint alleging the following facts. The Los Angeles County Sheriff's Department (LASD) hired Camarillo as a deputy in 1995. She was promoted to sergeant in 1998 and stationed in Lakewood. Camarillo performed her responsibilities in exemplary fashion and consistently received favorable performance reviews.

On March 24, 2011, she interviewed for a special sergeant position, referred to as "SAO," in the City of Hawaiian Gardens. LASD Lakewood Station Captain Christy Guyovich and the City of Hawaiian Gardens's City Manager Ernesto Marquez conducted the interview. The day after the interview, Guyovich told Camarillo that she was not selected because she was not male and not of Mexican heritage. A male Mexican-American deputy was selected. Camarillo complained to Guyovich that her rejection was discriminatory and illegal.

2

On March 28, 2011, Lieutenant Eduardo Hernandez met with Camarillo in his office. He asked if she had been complaining about Guyovich's selection for the SAO sergeant position. She told him the decision was discriminatory and illegal.

On July 7, 2011, Guyovich told Camarillo that she needed to "find a new home" because she was a "cancer" in the station. On July 14, 2011, Camarillo received an e-mail from Hernandez asking whether he or Guyovich needed to contact someone to start the process of "finding a new home" for her.

On August 12, 2011, Camarillo returned from vacation and filed a Policy of Equity complaint against Guyovich. That same day, Camarillo learned she was being transferred to a position at Men's Central Jail. Camarillo began work at the jail.

Camarillo alleged she is a white female. She was denied the coveted SAO sergeant position based on her race and gender. The SAO position would have led to promotional opportunities. In retaliation for her complaints, she was punitively transferred to the jail. She requested the morning shift, but was punitively assigned the evening shift. The retaliatory conduct has destroyed her ability to promote. The jail is well-known as a "dumping ground" for troublemakers. Camarillo filed an administrative complaint with the California Department of Fair Employment and Housing and received a right-to-sue notice on August 24, 2011.

**Motion for Summary Adjudication of Discrimination and Supporting Evidence**

The County filed a motion for summary adjudication of the cause of action for discrimination on the grounds that both Camarillo and the employee selected for the position are Hispanic, gender did not play a role in the decision, and there were legitimate, non-discriminatory reasons for the successful applicant's selection over Camarillo. In addition, denial of the SAO sergeant assignment was not an adverse employment action. It was a lateral assignment that did not include an increase in salary, benefits, or promotional opportunities.

3

The County presented evidence that five candidates applied for the SAO sergeant position, including Camarillo, LASD Sergeant Gabriela Herrera, and LASD Sergeant Jose Reveles. Herrera had worked in the City of Hawaiian Gardens as part of Operation Safe Streets. Reveles had been employed by LASD for 22 years, including being on a SAO team in the City of La Mirada. Reveles also has a master's degree in Emergency Services Administration.

Compared to Reveles, Camarillo's highest level of education is a bachelor's degree in occupational studies. She has six years less seniority and never worked on a SAO team.

During interviews for the SAO sergeant position, race and national origin were not discussed. Reveles and Camarillo were both born in the United States. Reveles is Hispanic, but Camarillo has identified herself as Hispanic on LASD employment paperwork. She was a member and an officer of the Los Angeles Chapter of the National Latino Peace Officers' Association.

After the interviews, Guyovich stated that she preferred Herrera for the position, due to Herrera's prior experience in the City of Hawaiian Gardens and her qualifications. Marquez had reservations about Herrera, because he recognized her and thought her work serving search warrants in the city would be negatively perceived. Marquez preferred Reveles, in part because Reveles's hometown of the City of Norwalk was close in proximity and demographics to the City of Hawaiian Gardens. Reveles had been Guyovich's second choice. Reveles was selected.

The County submitted evidence that the SAO Sergeant assignment was not a promotion, did not include an increase in salary or benefits, and did not provide any promotional opportunities that are not available to personnel without SAO assignments. It does not provide any additional overtime opportunities either.

4

## Motion for Summary Adjudication of Retaliation and Supporting Evidence

The County filed a different motion for summary adjudication of the cause of action for retaliation on the ground that Camarillo never voiced concerns about discrimination to Guyovich or Hernandez, the County had legitimate employment reasons for the actions it took, and Camarillo had not suffered an adverse employment action.

The county submitted evidence that Camarillo continued to complain to third parties about her failure to be selected long after other unsuccessful candidates had stopped. Hernandez advised her not to make derogatory comments to subordinates because it was bad for morale. Camarillo denied making negative comments and Guyovich believed the matter was resolved.

Due to personnel shortages, Camarillo was transferred from supervision of the station secretariat to patrol. Guyovich heard from third parties that Camarillo was again making negative comments about her leadership. Guyovich became concerned that Camarillo was a detriment to management of the station. Guyovich and Hernandez met with Camarillo to discuss any complaints. Camarillo denied that she was unhappy or had made negative comments. She accused her peers of making up stories about her. Unable to resolve any issue, Guyovich did not believe they could continue to work together and said she would assist Camarillo to find another work location. Hernandez advised her that he would be happy to assist her as well. Camarillo took vacation without seeking assistance. Guyovich contacted other LASD units to find a new assignment for Camarillo. The jail was the only location with openings for sergeants. Camarillo's salary and benefits have not been reduced, and she is in no worse position for promotion than before.

**Opposition to Motion for Summary Adjudication of Discrimination and Supporting Evidence**

Camarillo opposed the motion for summary adjudication of the discrimination cause of action on the grounds that direct evidence of discrimination presented a triable issue of fact, she was a member of a protected class, and the reasons for selecting Reveles were pretexual, because Camarillo was not less qualified than Reveles and the criticism of her job performance was unfounded. In addition, she argued the denial of the SAO sergeant position was an adverse employment action.

Camarillo submitted her declaration explaining that her supervision of the secretariat had required her to report and correct negative behavior, for which she received a commendation. She did not make negative comments about Guyovich or other employees of LASD, other than the issues related to their work that she discovered, reported and corrected. Aside from complaints about Guyovich's decision concerning the SAO sergeant position, Camarillo never spoke negatively about Guyovich's decisions at the Lakewood Station. Camarillo was never counseled, written up, or disciplined in any form in connection with her personal relations or her leadership. She also related the details of her meetings with Hernandez and Guyovich.

Camarillo submitted the declaration of Robert J. Olmsted. Olmsted worked for LASD from 1978 to 2010 in a variety of positions, including four different patrol stations and three different jail facilities. During his tenure as a Captain and Commander for LASD, Olmsted oversaw the entire operation of Men's Central Jail, Twin Towers Correctional Facility, and Century Regional Detention Facility.

Olmsted is familiar with LASD rules and regulations for documenting disciplinary issues. He was a supervisor in the LASD from 1988 to his retirement in 2010. During his career, he prepared and reviewed more than one thousand performance evaluations. He explained his method of investigation and documentation for personnel issues.

Olmsted declared the specialized SAO sergeant position is a "stepping-stone" for an officer's career in the LASD. When Olmsted was evaluating candidates, a candidate

with experience working specialized positions such as a SAO sergeant position had a better chance of getting an open position than a candidate without any experience in specialized positions. Having the experience of working a specialized position enhances an officer's ability to promote and obtain other coveted assignments in the future.

Olmsted also declared that an involuntary transfer of a sergeant from patrol to custody was considered a downgrade in the LASD. "It is known throughout the LASD that when an officer has a record of being involuntarily transferred back to custody from patrol, the immediate impression is that the officer is not a good employee or a trouble-maker within the LASD. Therefore, having a record of being involuntarily transferred from patrol back to custody negatively affects an officer's ability to promote and/or transfer in the future."

Olmsted's declaration was the sole evidence Camarillo cited in support of her assertion that denial of the SAO position was an adverse employment action.

**Opposition to Motion for Summary Adjudication of Retaliation and Supporting Evidence**

Camarillo opposed the motion for summary adjudication of the retaliation cause of action on the grounds that she engaged in a protected activity, Guyovich was aware of her protected activities at the time of the transfer, and the transfer to the jail was an adverse employment action. Camarillo cited Olmsted's declaration to support her allegation that transfer to a custody assignment is an adverse employment action. She also cited Hernandez's deposition testimony in which he acknowledged having heard the jail referred to as a "dumping ground." In Camarillo's declaration, she stated that she has had fewer overtime opportunities in the custody assignment than she did in her previous assignment.

7

## Reply and Trial Court Ruling

The County filed replies. The County also filed multiple objections to Camarillo's evidence. In particular, the County objected to Olmsted's entire declaration and each pertinent paragraph on the grounds that it was improper opinion, lacked foundation, that whether Camarillo suffered an adverse employment action was a legal question not properly the subject of expert testimony, Olmsted had not been properly qualified for the expert opinions that he offered, and Olmsted had not identified the facts or matters upon which he relied in asserting his opinions.

A hearing was held on August 23, 2013. The trial court ruled on the objections, including sustaining the County's objections to Hernandez's deposition testimony about unknown third parties referring to the jail as a "dumping ground" and Olmsted's statements about the SAO position and transfer to the jail.

The court found it undisputed that the SAO sergeant position did not involve a salary increase, was not a promotion, and did not provide additional benefits other than schedule flexibility. Experience as a SAO sergeant assisted an employee by increasing the base of knowledge, but the position was not required in order to promote to lieutenant. There was less opportunity for overtime in the SAO sergeant position. From these facts, the court concluded denial of the position was not an adverse employment action under the case law. The fact that the experience might be a positive factor if Camarillo chose to apply for a promotion was speculative, and non-selection for the assignment was not a barrier to promotion. The burden shifted to Camarillo to show a triable issue of fact existed.

The benefits of the SAO sergeant position as a stepping-stone to another potential position in the future or offering a flexible schedule did not render non-selection to be an adverse employment action. Moreover, the objections to Olmsted's declaration were sustained because what Olmsted would have done when he was a captain was not relevant to whether Camarillo would be hindered in her ability to promote in the future and lacked foundation in that regard. Camarillo did not cite any other evidence to raise a

8

triable issue of fact. The trial court granted the motion for summary adjudication of the discrimination claim on the ground that there was no triable issue of material fact as to whether non-selection for the position was an adverse employment action.

With respect to retaliation, the court noted the County's evidence that the transfer to the jail did not involve a loss in pay or title. It offered supervisory experience and promotional opportunities. Aside from difficulty getting interviews for other positions, Camarillo had admitted that she has no reason to believe her career has been damaged. She did not dispute that newly promoted lieutenants are typically assigned to the jail. The County had shifted the burden of proof.

Camarillo asserted there are fewer overtime opportunities at the jail, but the court concluded that since overtime was not eliminated, there was no triable issue of fact as to whether the change in her terms of employment was so detrimental and substantial as to constitute an adverse employment action. A change that is merely not to the employee's liking is not sufficient. The objections to Olmsted's declaration about the effect of a transfer to the jail on her career were sustained on the grounds that it lacked foundation and were conclusory. To the extent Olmsted was testifying as a lay witness, his opinion as to the general state of mind of the entire LASD was speculative as to Camarillo's career and inadmissible. To the extent he was testifying as an expert witness, he did not set forth sufficient facts to support his conclusions as to the impression of unspecified persons within LASD upon learning a sergeant was transferred to a custody assignment. There are no objective facts set forth that decision makers will not promote a person to lieutenant who has been transferred from patrol to custody. Expert opinion rendered without a reasonable explanation of the underlying facts leading to the ultimate conclusion has no evidentiary value. The Olmsted declaration consists of speculation and conclusions without a factual basis, and therefore, was not of substantial evidentiary value. Camarillo did not raise a triable issue of material fact as to whether the transfer to the jail constituted an adverse employment action. Camarillo's declaration and Hernandez's statement in deposition did not support the proposition that Camarillo's chances of promoting to lieutenant have been negatively affected. In addition, the fact

9

Hernandez had heard people refer to the jail as a dumping ground did not demonstrate Camarillo's chances of being promoted were significantly hindered. The court found Camarillo failed to show a triable issue of material fact as to whether she suffered an adverse employment action for purposes of the retaliation claim.

The minute order reflects the trial court granted the County's motions for summary adjudication, which fully resolved the action. On September 23, 2013, the trial court entered judgment in favor of the County and against Camarillo. Camarillo filed a timely notice of appeal.

## DISCUSSION

**Standard of Review**

"Summary adjudication motions are 'procedurally identical' to summary judgment motions. [Citation.]" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859 (*Serri*).) "A court may grant a summary judgment only if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.,* subd. (p)(2).) The defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to establish an essential element. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).)" (*Garrett v. Howmedica Osteonics Corporation* (2013) 214 Cal.App.4th 173, 180-181 (*Garrett*).) "There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Citation.]" (*Serri, supra,* at p. 860.)

10

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. [Citation.]" (*Garrett, supra,* 214 Cal.App.4th at p. 181.)

We apply a different standard of review to evidentiary rulings made in connection with a motion for summary adjudication. (*Garrett, supra,* 214 Cal.App.4th at p. 181.) In accordance with the weight of authority, we review the trial court's evidentiary rulings for an abuse of discretion. (*Ibid*; *Serri, supra,* 226 Cal.App.4th at p. 852; *Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.) The party challenging the ruling has the burden on appeal to establish an abuse of discretion, which we find only if the trial court's decision exceeds the bounds of reason. (*Serri, supra,* at p. 852.) "'Such evidentiary questions, however, are subject to the overarching principle that the proponent's submissions are scrutinized strictly, while the opponent's are viewed liberally.' [Citation.]" (*Ibid.*)

"Except to the extent the trial court bases its ruling on a conclusion of law (which we review de novo), we review its ruling excluding or admitting expert testimony for abuse of discretion. [Citations.] A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.] But the court's discretion is not unlimited, especially when, as here, its exercise implicates a party's ability to present its case. Rather, it must be exercised within the confines of the applicable legal principles." (*Sargon Enterprises, Inc. v. University of Southern Cal.* (2012) 55 Cal.4th 747, 773 (*Sargon*).)

"'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' [Citations.] 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.] . . . [¶] The legal

11

principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' [Citation.] To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' [Citation.]" (*Sargon, supra,* 55 Cal.4th at p. 773.)

## Expert Declaration

Camarillo contends the trial court abused its discretion by excluding Olmsted's declaration because it did not liberally construe Olmsted's declaration in opposition to summary judgment. We agree that Olmsted's declaration contained admissible opinion testimony.

Evidence Code section 801 provides: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." "'We construe this to mean that the matter relied on must provide a reasonable basis for the particular opinion offered, and that an expert opinion based on speculation or conjecture is inadmissible.' [Citation.]" (*Sargon*, *supra*, 55 Cal.4th at p. 770.)

"Expert testimony is admissible to prove custom and usage in an industry. [Citations.] But such testimony is subject to foundational challenges. For example, the lack of foundation of an expert's testimony can be as to the expert being qualified, the validity of the principles or techniques upon which the expert relied, or as to the reliability and relevance of the facts upon which the expert relied. (See Park, Trial

12

Objections Handbook (2d ed. 2012) § 8:29, p. 8-77.)" (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114 (*Howard*).)

"An expert may rely upon hearsay and other inadmissible matter in forming an opinion. (Evid. Code, § 801, subd. (b).) But that matter relied upon must 'provide a reasonable basis for the particular opinion offered.' (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.) An expert opinion may not be based on conjectural or speculative matters. (See *Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1524.) Whether the material used by an expert 'is of a type on which an expert reasonably may rely . . . the factors of *necessity* and relative *reliability* [should] be given strong consideration.' [Citations.]" (*Howard*, *supra*, 208 Cal.App.4th at p. 1115.)

"An expert may rely upon experiences and conversations he or she has had and information he or she has obtained without the necessity of providing the specifics of such experiences and conversations. As one court has said, 'Expert testimony may be founded on material that is not admitted into evidence and on evidence that is ordinarily inadmissible, such as hearsay, as long as the material is reliable and of a type reasonably relied upon by experts in the particular field in forming opinions. [Citation.] Thus, a gang expert may rely on conversations with gang members, his or her personal investigations of gang-related crimes, and information obtained from colleagues and other law enforcement agencies. [Citations.]' (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1463-1464; see *People v. Gardeley* (1996) 14 Cal.4th 605, 620 [gang expert 'based [his] opinion on conversations with the defendants and with other Family Crip members, his personal investigations of hundreds of crimes committed by gang members, as well as information from his colleagues and various law enforcement agencies'].) The California Supreme Court said, 'A gang expert's overall opinion is typically based on information drawn from many sources and on years of experience, which in sum may be reliable.' (*People v. Gonzalez* (2006) 38 Cal.4th 932, 949.)" (*Howard*, *supra*, 208 Cal.App.4th at p. 1117.)

"According to the authorities, the gang expert's testimony may be based on his or her experience and general conversations without requiring specifics about transactions

or people with whom the expert has conversed.  As the court in *Hope v. Arrowhead & Puritas Waters, Inc.* (1959) 174 Cal.App.2d 222, 230, said, 'In forming his opinion an expert is not confined to his own experience or facts personally known or observed by him, but may take into consideration the products of his education and study of his profession.'  Thus, there is no requirement that an expert set forth specific persons, conversations, or dates of such conversation for the formation of the opinion, as apparently required by the trial court."  (*Howard*, *supra*, 208 Cal.App.4th at p. 1118.)

"The California Supreme Court in *Sargon, supra,* 55 Cal.4th 747, further explained that the trial court's gatekeeping responsibility with respect to expert testimony is governed not only by Evidence Code section 801, subdivision (b), but also by Evidence Code section 802.  (*Sargon, supra,* at p. 771.)  Section 802 states:  'A witness testifying in the form of an opinion may state . . . the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion.  The court in its discretion may require that a witness before testifying in the form of an opinion be first examined concerning the matter upon which his opinion is based.'"  (*Garrett*, *supra*, 214 Cal.App.4th at p. 186.)

"The rule that a trial court must liberally construe the evidence submitted in opposition to a summary judgment motion applies in ruling on both the admissibility of expert testimony and its sufficiency to create a triable issue of fact.  (*Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332-1333; *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125-126, 128-130.)  In light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial. [Citations.]"  (*Garrett*, *supra*, 214 Cal.App.4th at p. 189.)

"We must resolve 'any doubts as to the propriety of granting the motion in favor of the plaintiff. [Citation.]'  [Citation.]  The requisite of a detailed, reasoned explanation for expert opinions applies to 'expert declarations in *support* of summary judgment,' not to expert declarations in *opposition* to summary judgment.  [Citation.]  This is because a

14

defendant moving for summary judgment bears the heavy '"burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." [Citation.]' [Citation.] On the other hand, a plaintiff opposing a motion for summary judgment need only raise a triable issue of fact. (See *AARTS Productions, Inc. v. Crocker National Bank* [(1986)] 179 Cal.App.3d [1061,] 1065 ['Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue'].)" (*Jennifer C. v. Los Angeles Unified School Dist.*, *supra*, 168 Cal.App.4th at pp. 1332-1333.)

In this case, Olmsted was abundantly qualified to provide expert testimony on matters related to LASD and the Men's Central Jail. He oversaw the entire operation of the jail up until the year before Camarillo's transfer and reviewed more than one thousand performance evaluations in his career. He stated that a SAO sergeant position is a stepping-stone in an officer's career at LASD, and a candidate with experience as a SAO sergeant is more likely to be selected for an open position. He also stated that an involuntary transfer of an employee to an assignment at Men's Central Jail is considered a downgrade in the employee's career. As an expert witness, Olmsted is qualified to testify about these matters and not required to list specific conversations with specific personnel. Any concerns about the matter upon which the opinions are based can be easily remedied at trial through an examination pursuant to Evidence Code section 802. An employee who oversaw the entire operation of the jail will reasonably be able to provide the necessary level of background information to support his opinion that a SAO sergeant position is a stepping-stone for advancement and involuntary transfer to the jail is a downgrade. Olmsted's declaration must be liberally construed in opposition to the motions for summary adjudication in order not to unfairly deprive the plaintiff of a potentially meritorious action. We conclude the statements at issue were admissible, and in fact, although the trial court excluded the evidence, the court considered the statements in reviewing the evidence in opposition to the motions.

**Summary Adjudication of Discrimination**

Camarillo contends the evidence demonstrated that triable issues of material fact exist as to discrimination and retaliation. This is correct.

## A. General Principles and Analytical Framework

Federal and state laws prohibit employers from discriminating against employees on the basis of race, sex, or ethnic origin. (Gov. Code, §§ 12940, subd. (a), 12941, subd. (a); 42 U.S.C. § 2000e et seq. [Title VII of the Civil Rights Act of 1964].) A plaintiff can prove employment discrimination cases under FEHA through direct or circumstantial evidence. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354.) When the plaintiff relies on circumstantial evidence, California courts apply the three-stage, burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*), to evaluate employment discrimination claims based on disparate treatment. (*Ibid.*)

The *McDonnell Douglas* test does not apply when the plaintiff presents direct evidence of discrimination. (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 550 (*DeJung*).) "'[T]he shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the "plaintiff [has] his day in court *despite* the unavailability of direct evidence." [Citation.]' [Citation.] Thus, there is no need to engage in this burden-shifting analysis where there is direct evidence of discriminatory animus. [Citation.]" (*Ibid.*) "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue. [Citation.]" (*Ibid.*)

"Of course, proof of discriminatory animus does not end the analysis of a discrimination claim. There must also be evidence of a causal relationship between the

16

animus and the adverse employment action[.]" (*DeJung, supra,* 169 Cal.App.4th at p. 550.)

"Under the established case law, [the plaintiff] need not demonstrate that every individual who participated in the failure to hire him shared discriminatory animus in order to defeat a summary judgment motion. ""[A]n individual employment decision should not be treated as a . . . ["]watertight compartment, with discriminatory statements in the course of one decision somehow sealed off from . . . every other decision.["]' [Citation.]"' [Citations.] Thus, showing that a significant participant in an employment decision exhibited discriminatory animus is enough to raise an inference that the employment decision itself was discriminatory, even absent evidence that others in the process harbored such animus." (*DeJung, supra,* 169 Cal.App.4th at p. 551.)

### B. Adverse Employment Action

Camarillo contends triable issues of fact exist as to whether she suffered an adverse employment action with respect to her non-selection for the SAO position. Although it is a close issue, we must resolve any doubts as to the propriety of granting the motion in favor of the plaintiff.

"[T]o be actionable, an employer's adverse conduct must materially affect the terms and conditions of employment." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1051, fn. 9 (*Yanowitz* ).) "[T]he determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." (*Id.* at p. 1052.) "[T]he phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide." (*Id.* at p. 1054.)

Adverse employment actions include "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job

17

performance or opportunity for advancement in his or her career." (*Yanowitz, supra,* 36 Cal.4th at p. 1054.)  "Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of [Government Code] sections 12940[, subdivision] (a) and 12940[, subdivision] (h)."  (*Id.* at pp. 1054–1055, fn. omitted.)  "Actions that threaten to derail an employee's career are objectively adverse" and can constitute an adverse employment action.  (*Id.* at p. 1060; see *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 374 [removal of police lieutenant from position near the top of the department's chain of command and all law enforcement duties constituted actionable adverse employment action].)

"A transfer can be an adverse employment action when it results in substantial and tangible harm." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 393 (*McRae*); see *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1389 [transfer of principal to another school was an adverse employment action because the transfer "could be viewed unfavorably," "in reality was a demotion," and the new school did "not present the kinds of administrative challenges an up-and-coming principal wanting to make her mark would relish"].)  "'[A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences . . . such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.  Mere idiosyncrasies of personal preference are not sufficient to state an injury.'" (*McRae, supra,* at p. 393, citing *Brown v. Brody* (D.C. Cir. 1999) 199 F.3d 446, 457.)

"[T]he determination of what type of adverse treatment properly should be considered discrimination in the terms, conditions, or privileges of employment is not, by

18

its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee." (*Yanowitz, supra,* 36 Cal.4th at p. 1054.)

In this case, the County shifted the burden of proof by demonstrating that the SAO sergeant position did not involve an increase in salary, benefits or overtime opportunities. In response, Camarillo submitted evidence that a SAO sergeant position is a stepping-stone in an officer's career advancement, and officers with experience in a SAO sergeant position are more likely to be selected for open positions. The fact that five employees applied for the SAO sergeant position at issue in this case suggests it was desirable. Olmsted's declaration that an employee who served as a SAO sergeant was more likely to be selected for an open position than an employee without SAO sergeant experience is borne out by the County's professed selection process. One of the primary reasons given by the County for selecting Reveles for the SAO sergeant position in the City of Hawaiian Gardens was because he had previously served on a SAO team. Viewing the evidence in the light most favorable to Camarillo, a trier of fact could reasonably find the SAO sergeant position constituted an advancement in an officer's career path and denial of the position for discriminatory reasons would be an adverse employment action.

Alternatively, the County contends the trial court's ruling should be upheld because Camarillo has no admissible direct evidence of intentional discrimination. Camarillo relies on her conversation with Guyovich, in which Guyovich attributed discriminatory statements to the City. The County asserts the statements by a third party are inadmissible hearsay. This analysis is incorrect, however, because the evidence is not being presented for the truth of the statements, but simply as the basis for Guyovich's decision to select Reveles over Camarillo. We conclude triable issues of fact exist as to Camarillo's discrimination claim.

19

## Summary Adjudication of Retaliation

Camarillo contends triable issues of fact also exist as to her claim for retaliation. Again, we agree.

### A. Applicable Law

"'To establish a prima facie case of retaliation, the plaintiff must show (1) he or she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) there exists a causal link between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation "drops out of the picture," and the burden shifts back to the employee to prove intentional retaliation. [Citation.]' [Citation.]" (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1152.)

"Both direct and circumstantial evidence can be used to show an employer's intent to retaliate. 'Direct evidence of retaliation may consist of remarks made by decisionmakers displaying a retaliatory motive. [Citation.]' [Citation.] Circumstantial evidence typically relates to such factors as the plaintiff's job performance, the timing of events, and how the plaintiff was treated in comparison to other workers. [Citations.]" (*Colarossi v. Coty US Inc., supra,* 97 Cal.App.4th at p. 1153.) A causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment action. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69.)

## B.  Adverse Employment Action

Camarillo contends triable issues of fact exist as to whether her transfer to the jail constituted an adverse employment action.

The County shifted the burden of proof by demonstrating that Camarillo's salary and benefits remained the same, and she was no less eligible for promotion in the new position.  In response, Camarillo submitted evidence that an involuntary transfer to the jail is considered in essence to be a demotion which will negatively affect her ability to secure a promotion or transfer.  She also presented evidence that she had fewer opportunities for overtime work.  This evidence was sufficient for a trier of fact to reasonably conclude the involuntary transfer to Men's Central Jail was an adverse employment action.

The County contends the trial court's ruling can alternatively be upheld on the ground that Camarillo did not reasonably believe she was subjected to discrimination.  The County's contention, however, is based on the premise that evidence of Camarillo's conversation with Guyovich was inadmissible.  We have already explained that the conversation is admissible as the basis of Guyovich's decision.  The County also contends it had legitimate reasons to reassign Camarillo, but admits the reasons are based on Camarillo's complaints.  Triable issues of fact exist as to the cause of action for retaliation.  The order granting summary adjudication of both causes of action as to the County and the judgment in favor of the County must be reversed.

## DISPOSITION

The judgment and the trial court's order granting the motions for summary adjudication are reversed as to respondent County of Los Angeles.  Appellant Dana L. Camarillo is awarded her costs on appeal.


KRIEGLER, J.


We concur:


TURNER, P. J.


GOODMAN, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.